Mr. Westover. Ms. Westover. Ms. Westover. Sorry. No problem. Thank you, your honor. My name is Blair Westover. I represent defendant appellant Mr. Keenan Rollerson. The question I guess as I see it today is whether the district court was justified in relying on the PSIR sort of subpoena. The PSIR's summary of the search warrant application alleging that Mr. Rollerson engaged in four transactions with the cooperating source in the couple of months prior to his arrest. It's our position that the PSIR's summary of that warrant or the allegations in the search warrant affidavit amounts to a naked and unsupported charge. At least in the absence of information as to what the warrant actually said. Ms. Westover, is Campbell's affidavit for the search warrant part of the district court record before us? It's part of the district court record and the district court said that it was relying on it. As we note in our brief, that search warrant, or sorry, that Campbell's complaint discusses those controlled purchases in two sentences. And says controlled purchases happen, fentanyl and heroin were discovered. Campbell doesn't provide any information about what documents he was relying on when he said that. Ms. Westover, we couldn't find the search warrant affidavit in the record. Yeah, not the complaint affidavit, but the search warrant affidavit. I'm sorry, I answered the wrong question. The search warrant affidavit is not in the record at all. Why not? The defense presumably had it, right? We did get a copy of it, yes. So if there was a problem, why not put it in front of the court and address it? I think I'm probably going to give the same answer to that question that the government would give if asked. And the answer is we didn't think we had to. If both sides want to play the finesse game, relying on the burden of proof, it's hard for me to see a reason to reverse whichever way the court went. Particularly given we don't know a lot, at least in this appeal, we don't know a lot about what that search warrant affidavit said. But we have a pretty good idea that it was corroborated after the fact with four kilograms of fentanyl and $153,000 in cash in the locations that were searched, not to mention the defendant's statement that he was responsible for dealing at the Madison Court, if I've got that address right, but the Madison Court Stash House. It's Majestic, I think, but it's the Indianapolis House. Majestic, yes, thank you. That's how I've been referring to it. To take them in turn, I don't think that the finding of the fentanyl is going to be dispositive proof of the corroboration just because the fact that somebody was a drug dealer, this court has held on one occasion, doesn't justify the district court in finding for relevant conduct purposes that isn't corroboration that allows the district court to find for relevant conduct purposes that specific transactions occurred. I take it that the affidavit was making these representations based not only on what the informant said, what drugs the informant turned over as well, and what the surveillance officers observed and recorded. And even if Judge Hanlon never saw that affidavit, if no question was raised as to the accuracy of the probation officer's summary of that affidavit, why could he not rely on the presentence report? It's our position that the reliability has to be established before it's the defendant's obligation to do something other than a bare denial. And in this case, I certainly don't think the PSIR, because it doesn't include any of the details about what the affidavit said. And one can assume stuff about it. We don't know. For controlled substances, what constitutes a controlled purchase varies from situation to situation. You know, sometimes it's full video recording, and sometimes it's just sending the guy out there to try to make a deal. So we don't have that information. Well, you did have that information, but didn't present it to the district court, right? That's correct. And again, I wasn't there. You know, the fact that the district court has to find isn't what the warrant says or doesn't say. It's that these controlled substances, these controlled substance purchases happened, right? And I really do think that it is in situations where you have something that, you know, if it occurred, should be easily and readily provable by the government. I really do think it should be enough for the defense to say, you know, move forward with the evidence. And depending on what the search warrant affidavit said, it might not even be enough. You know, this is a situation where this court has cautioned that district courts should be careful about ensuring that reliability is established. The defendant's sentence was increased, or the guideline range was increased upwards of five times because of this finding. And this is a situation where the government could have made these allegations at trial. Certainly the district court said that it would have assisted the fact finder if they had made them at trial. And they explicitly held them back for the purpose and for the explicit purpose of avoiding discovery, right? And so I think in that set of facts, it really should be on the government to prove reliability before the defendant's burden to challenge with something other than a denial is sort of pinged. The and I don't ask to Campbell's affidavit in the complaint. I obviously don't think that that provides corroborating reliability. Clearly, it doesn't. That's that's that's not the point. OK, but I agree. They did find fentanyl at the house. And I understand that that's some amount, you know. Yes, that's something. But it's not like this is a situation where some other witness was testifying at trial that they had seen Mr. Allison with the fentanyl, right, or seen him or saw him selling fentanyl before. And we did present some evidence or at least reason to believe at trial that the fentanyl found at that apartment didn't he didn't know about it. It didn't have to do with him in that sense. You know, it's a weird thing for someone to do to hand keys to an apartment, to an FBI agent and say or DEA agent and say, I know you're going to search it. You're going to find heroin and not to mention any of the other drugs if he knew about them. So that's at least some reason to know about the ninety thousand dollars in the laundry bag. Right. Sure. I mean, that's you didn't mention. I don't mean to be snarky about it, but I mean, it was. I understand the point. I think that four kilograms of fentanyl. Is a lot to forget about if he's, you know, keeping it there in the apartment. I'm into my rebuttal time. So unless there are any immediate questions, I'd like to reserve the rest if I could. Certainly, my counsel is lying. May it please the court, Laura Langenkirch for the United States. The district judge in this case presided over a two day jury trial at which law enforcement officers testified that the defendant admitted he was the only one involved in the drug sales. And gave them the key to his dash house, where they found military grade weapons and distribution quantities of drugs. As your honor mentioned, four kilograms of fentanyl, among other items. The jury then convicted the military grade. I assume these were semi automatic rather than automatic. I believe so. Yes, your honor. Okay, thanks. The defendant now contends that it was clear error for the district judge to rely on statements in the PSR describing him selling heroin at that very same stash house mere days before law enforcement searched it and arrested him. Two days of trial evidence is not enough, according to the defendant, but this court's precedent says the opposite. Both maze and Smith stand for the proposition that trial and record evidence can corroborate the PSR. In fact, maze is very analogous here. What, if anything, does the search warrant affidavit disclose about the confidential informants reliability? Your honor, I was, I did not receive a copy of the search warrant affidavit. You haven't seen it either. No, your honor. It was not in the record. Okay. But this is like a game of blind man's bluff and Did it make you like wonder? Your honor, after hearing that he had the key to the apartment that had the four kilograms of fentanyl in it, it did not make me wonder. What if there were 20 keys to that apartment? I think that's a fact that. Opposing counsel raised as a possibility to the district court and that the district court considered and rejected and the factual finding that is reviewed for clear error. And in this circumstance, your honor, maze and Smith established that the district court can rely on the PSR. As it did here when corroborated by all this evidence at trial. If the court has nothing more for me, I'll request that this court affirm the sentence. Thank you. Thank counsel. Anything further, Ms. Westover. I just wanted to clear up one specific sort of factual claim or statement. And that is the district court explicitly relied. On the controlled purchases in finding that the fentanyl at the apartment was attributable to Mr. Rollerson. So, the court said, yes. And of course, as you this court has pointed out that I'm relying on the controlled substance purchases in part because they're corroborated by the trial evidence. But the district court clarified defense counsel. We asked to clarify to say. So, you are relying on the controlled purchases to find the fentanyl at the apartment and the district court said, yes. And that's on page 17 and 18 of the appendix. So, that's 1 thing. The 2nd thing briefly that I wanted to point out is. In answer to wrote Judge Roebner's question. I have seen the affidavit. I requested it. It is outside the record and I, because I saw it for exactly the reasons that you asked about. I was curious. But I was not trial counsel, but I have seen the affidavit. If you have any, it would be outside the record though. And with that, unless there are any questions from this court. We would ask that you reverse the district court's sentence. Thank you. Thank you very much. The case is taken on. Okay.